UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CHAVARRIA, <br><br> Plaintiff, <br><br> vs. <br><br> P. A. GREEN, ET AL., <br><br> Defendants. | Case No.: 1:10 cv 02324 LJO GSA PC <br><br><br> ORDER DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ON COGNIZABLE CLAIMS <br><br> RESPONSE DUE IN THIRTY DAYS |

     Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

     Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison (PVSP), brings this civil rights action against defendant correctional officials employed by the CDCR at PVSP. Plaintiff names the following individual defendants:  P. A. Green; P.A. Wilson; Dr. Duenas; Dr. Igbinosa.

     Prior to Plaintiff's incarceration, he suffered injuries as a result of being shot several times by police. Plaintiff was shot in the chest, kidney, spleen, colon and thoracic spine. Plaintiff underwent two separate surgeries to address the damage. Plaintiff alleges that since his incarceration, he has needed constant treatment and pain management.

Plaintiff alleges that his treatment "took a significant turn for the worst" while at PVSP. Plaintiff alleges that he has been prescribed Morphine Sulphate "for several years," and that, "on more than one occasion, Pleasant Valley Prison Officials have allowed Plaintiff's medication(s) to expire due to negligence."

Plaintiff had been receiving a dose of Morphine Sulphate of 30 milligrams twice daily and 1200 milligrams of Gabapentin three times daily to relieve pain caused by the gunshot injuries. Plaintiff had been prescribed these pain medications at these doses "for several years." At some point, Plaintiff's dosages were reduced to 15 milligrams of Morphine Sulphate twice daily and 300 milligrams of Gabapentin twice daily.

Plaintiff alleges that Morphine Sulphate is "highly addictive" and that when it is discontinued "cold turkey," he suffers from severe delirium tremens (DTs) as a result of withdrawal. Plaintiff alleges that each time his medication was discontinued because he had not seen his primary care provider "due to prison overcrowding," he suffered severe DTs, which caused constant and severe pain. Plaintiff alleges that on several occasions, this condition lasted "for days," and was ignored by medical staff. Plaintiff "spent several weeks total unable to sleep, eat, walk, or even to use the bathroom due to pain caused by these injuries."

Plaintiff specifically alleges that between the dates of January 2008 and November 2010, he informed Dr. Igbinosa of his severe pain and "lack of a continued medical regimen and the fact that he hadn't been seeing his doctors as scheduled." Dr. Igbinosa advised Plaintiff to file a grievance regarding the issue. Plaintiff alleges that his medication was discontinued after several of these meetings, "due to Dr. Igbinosa's failure to correct the problem raised."

When Plaintiff sought an explanation from Defendant Green as to why his medication had been reduced, he was told that Defendant Green was under orders by his supervisor to "cut down everyone's meds," and "reduce the narcotics on this facility." Green informed Plaintiff that he was "just a casualty of my orders."

When Plaintiff asked Dr. Duenas why his medication was reduced, he was told that the medication was being reduced because "Plaintiff's internal system was not breaking down the

medications" and that his kidney had signs of damage.  Plaintiff asked to see evidence of kidney damage.  Neither Defendant provided Plaintiff with documentation.

Plaintiff alleges that several diagnostic tests were ordered, yet not administered.  These included an MRI and a CT scan.  Plaintiff alleges that Defendants Green and Duenas refused to re-order the tests.  Plaintiff was told that the dye used in the CT scan would damage his kidneys, and the MRI would move the bullets still lodged in Plaintiff's back.

Plaintiff also met with Defendant Wilson, and advised him of his "severe pain and his inability to eat, sleep, or walk on most days."  Wilson told Plaintiff that "he is under orders from the big wigs to cut medications not to up them."  Wilson specifically advised Plaintiff that "he had not doubt that Plaintiff was in pain, but 'I have to protect my job and I can only do that by following orders."  Plaintiff specifically asked Defendant Wilson if "he personally felt Plaintiff's treatment was inadequate in light of his injuries and Defendant Wilson stated 'yes, but it's the only treatment you'll get.  This is all above my pay grade."

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'"  Id.  (quoting Estelle v. Gamble, 429 U.S. 97. 104 (1976)).  Lopez takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference."  First, a court must examine whether the plaintiff's medical needs were serious.  See Id.  Second, a court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment."  Id. at 1132.

Liberally construed, Plaintiff  a claim for relief against Defendants Green, Duenas and Wilson. Plaintiff has alleged facts indicating that he informed these Defendants of the specific harm to Plaintiff, and was told that they could not restore Plaintiff's original dosage.  Plaintiff has specifically alleged that these Defendants told Plaintiff that the decision to reduce his pain

3

medication was based upon non-medical reasons.  Plaintiff has alleged facts indicating that he suffers from severe pain as a result of the decisions made by Defendants.

As to Defendant Dr. Igbinosa, the only specific conduct charged is that when told of Plaintiff's concerns, he advised Plaintiff to file an inmate grievance.  Plaintiff appears to be alleging that Dr. Igbinosa is liable because his subordinates refused to provide adequate pain medication, despite Plaintiff's protests.   Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal , 556 U.S. 662, 673 (2009).  Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions.  Id. at 673.  In other words, to state a claim for relief under section 1983, Plaintiff must link e Dr. Igbinosa with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff's complaint states a claim under the Eighth Amendment against Defendants Green, Wilson and Duenas for deliberate indifference to his serious medical need. However, the complaint does not state any other cognizable claims.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of  Dr. Igbinosa, and will forward to Plaintiff three summonses and three USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's

4

constitutional or other federal rights, Hydrick, 500 F.3d at 987-88. With respect to defendants like Warden Clark, "there is no pure *respondeat superior* liability under § 1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Id. at 988 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (citations omitted).

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Green, Wilson and Duenas for deliberate indifference to his serious medical need; and
3. If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**/s/ Gary S. Austin**

Dated: **November 13, 2013**

UNITED STATES MAGISTRATE JUDGE